Filed 8/11/21  P. v. Fierro CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DAVID REY FIERRO,<br><br>        Defendant and Appellant. | E074545<br><br>(Super.Ct.No. CR23644)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

The renewed petition for rehearing is denied.  The opinion filed in this matter on July 13, 2021, is modified as follows:

Page 23, line 12, add the following after the words, "made by a jury."

"Furthermore, the California Supreme Court's recent decision in *People v. Lewis* (July 26, 2021, S260598) ___ Cal. 5th ___ [2021 Cal. Lexis 5258] does not alter our analysis here because, as we have held, defendant was convicted as the actual killer and cannot establish a prima facie case as a matter of law.  Thus, any errors by the trial court

1

in handling the prima facie stage are harmless.  (*Id*. at p. ___ [2021 Cal. Lexis 5258, *33-34].)"

Page 23, line 14, delete "a formal appointment of counsel or."

Except for these modifications, the opinion remains unchanged.  The modifications do not affect a change in the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER_____
Acting P. J.

We concur:

SLOUGH_____
J.

RAPHAEL_____
J.

Filed 7/13/21  P. v. Fierro CA4/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074545 |
| v. | (Super.Ct.No. CR23644) |
| DAVID REY FIERRO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.  Affirmed.

James S. Thomson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Robin Urbanski, and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 1985, defendant and appellant David Rey Fierro robbed a husband and wife outside the market they owned, and then shot and killed the husband. Defendant was convicted of two counts of robbery (Pen. Code,[1] § 211) and one count of first degree murder (§ 187) with express jury findings that defendant was the actual shooter and committed the murder during a robbery (§ 190.2, subd. (a)(17)(i)). (*People v. Fierro* (1991) 1 Cal.4th 173, 200 (*Fierro I*).) In 1991, the California Supreme Court affirmed the judgment in its entirety. (*Id.* at p. 255.)

Approximately 34 years later, defendant brought a petition for resentencing under section 1170.95, which was enacted by the Legislature through its passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437). The trial court denied the petition without holding an evidentiary hearing. Defendant appeals from the trial court's order, arguing that he made a prima facie showing that he falls within the provisions of section 1170.95 and that the trial court erred in relying on the special circumstance findings to conclude no prima facie showing had been made. We reject these contentions and affirm the trial court's order.

**FACTUAL AND PROCEDURAL HISTORY[2]**

"[A.    THE PROSECUTION]

"On the evening of January 6, 1985, Sam Allessie was robbed and murdered in front of the small grocery store which he owned with his wife, Trudy, in Glen Avon.

---

[1] All future statutory references are to the Penal Code.

[2] The factual background is taken from the Supreme Court's opinion in *Fierro I*, *supra*, 1 Cal.4th at pages 200-203.

2

Defendant, who was on parole for burglary, was arrested two days later. He was linked to the crimes by eyewitness identifications, fingerprints which he left on the victim's truck, bloodstains in his car, and money from the robbery found in his wallet. As recounted at trial, the facts of this tragic episode unfolded as follows.

"About 6 p.m. on the evening in question, Sam and Trudy Allessie were preparing to close their store for the night. As was their custom on Sunday evenings, they planned to deposit the day's receipts in the night slot of their bank and then go to dinner. Trudy had placed in her purse approximately $4,000, comprised of checks, money orders, and about $1,000 in cash. The cash was in $50 and $100 denominations. Trudy observed Sam look into his wallet, which he carried in his back pants pocket, for money to pay for dinner.

"They left through the front doors of the market and approached Sam's pickup truck. Sam opened the passenger door for Trudy and circled around the back of the truck to the driver's side. As Trudy lost sight of Sam, she heard loud talking from the rear of the truck. Suddenly she saw a 'kid' trying to unlock the driver's door with Sam's keys. She became scared and heard Sam holler, 'Watch your purse, honey.' Trudy opened her door to join her husband and at that moment was confronted by the same 'kid' she had seen moments earlier. He demanded money. Trudy responded, 'All right, all right,' and opened her purse and handed him a bundle of currency. He then grabbed the purse and ran toward the rear of the truck, out of view.

3

"Trudy thereupon started out of the truck and heard a shot.[3] Running to the front of the store she found Sam on the ground, bleeding. As she screamed for help, a light colored car sped out of the parking lot and turned onto Mission Boulevard toward the freeway.

"About the time the Allessies were closing the store, Robert Gonzales was in a telephone booth outside the market talking to his girlfriend. Gonzales heard a gunshot and saw a man with a gun. Several seconds later, he observed the man fire a second shot and then run toward a yellow Pacer. As Gonzales took cover, he saw a figure enter the Pacer, which raced away in the direction of the freeway.

"That same evening, Carol DiCenso and her husband, Antonio, were driving on Mission Boulevard in the area of Trudy's Market. Carol was in the rear passenger seat. As they approached the market, Carol observed three men standing in a group; one was dressed in a white, short-sleeved T-shirt; the man in the center, Sam Allessie, was dressed in dark clothing; the man to Sam's left was dressed in a black sleeveless tank-top shirt. As the DiCensos' car drove past, Carol saw and heard a gunshot blast fired by the man in the white T-shirt. Sam Allessie slumped to his knees and fell over. Seconds later, the man in the white T-shirt straddled the fallen body, stretched out his arm, and fired another shot into the victim.

"Carol DiCenso then observed the man in the white T-shirt bend over, put his arms around the victim in a 'hugging' type motion and reach underneath him. In the

---

**3** "Although Mrs. Allessie testified that she heard two shots, she was unsure when the second shot occurred."

4

meantime, the other man in the dark shirt, who had been standing nearby, started to run away. The shooter followed, running toward a car which had its lights on. Moments later, Benita Watson, who was a passenger in another car travelling down Mission Boulevard, noticed a light colored AMC Pacer with a chrome luggage rack travelling in the same direction. Ms. Watson heard a woman scream and heard shouts to 'follow that car.' The Pacer then accelerated and pulled away.

"Sam was dead when the police arrived at the scene. His car keys and wallet were missing. Blood spots and a bloody shoe print were observed leading away from the body. Based on the descriptions of the assailant and the getaway car and conversations with local law enforcement officers, Sergeant Turley of the Riverside Sheriff's Department focused on defendant as a possible suspect. Within several days, it was discovered that four fingerprints lifted from Sam Allessie's truck matched defendant's fingerprints. Shortly thereafter, defendant was detained and taken into custody. When he was stopped, he was driving an AMC Pacer with a luggage roof rack. His girlfriend, Laura Garcia (hereafter Laura Fierro),[4] and a small child were passengers in the car. A search of Laura Fierro's purse at the station disclosed a man's wallet containing defendant's driver's license. The wallet contained $650 in cash, comprised of four $100 bills and five $50 bills.

"Several weeks later, Mrs. Allessie identified defendant from both a photographic and a live lineup. At trial, she identified defendant as the man who had robbed her.

---

**4** "Defendant married Laura Garcia 10 months after his arrest."

Robert Gonzales also picked defendant from a photographic lineup.[5] Although Carol DiCenso could not identify the man she saw that evening, her description of the shooter as wearing a light colored T-shirt matched Mrs. Allessie's description of defendant.

"A search of Laura Fierro's house, where defendant lived, revealed several white short-sleeved T-shirts and a pink slip for the Pacer signed by defendant. Human blood was found on the sole of one of defendant's shoes. Testing could only determine that it was human blood. A search of defendant's Pacer revealed dried blood in the area of the front passenger door. Testing determined that it was not that of defendant but was consistent with the blood of Sam Allessie.

"An autopsy disclosed that the victim died of two gunshot wounds to the chest. One wound was consistent with having been fired from a distance of up to 12 inches while the victim was standing, allowing the bullet to exit through the back. The other was a larger 'contact' wound, meaning the muzzle of the gun was in contact with the victim's clothes. The nature and size of the entry wound, the bullet's trajectory, the crush-type injuries to the back and the piece of bullet lodged in the back all indicated that the victim was lying on the ground when the shot was fired. Dr. Hunter, who performed the autopsy, determined that the smaller wound was inflicted first, and that the larger 'contact' wound was inflicted shortly thereafter. Either wound would have been fatal.

---

[5] "Gonzales stated that he was 'not positive,' but identified defendant as the shooter."

"[B.    THE DEFENSE]

"The defense called several witnesses to show that a person other than defendant was seen leaving the scene after the shooting.  Hubert Joubert, who lived across the street from Trudy's Market, testified that he saw a Mexican male wearing some sort of checkered jacket walking away from the scene shortly after the shooting.  When this individual was a block away he 'took off running.'  Joubert also stated that he saw two cars driving away from the scene on Mission Boulevard.  Lori James, who also lived near the market, stated that she heard two gunshots and saw two men running from the scene; one of them had on a white T-shirt; she did not see the other because he had entered a yellow Pacer.  The man in the T-shirt entered the passenger side of the car.  Charles Dickey, who was driving his tow truck on Mission Boulevard, observed a Pacer similar to defendant's but with a different license plate.

"Defendant also called several deputy sheriffs who spoke with Trudy Allessie shortly after the crimes; defendant attempted to impeach Mrs. Allessie's trial testimony with prior inconsistent statements as to precisely when and where she heard the two shots, and the manner in which the robber took her purse.

"Defendant also called two expert witnesses.  David Duncan testified that the lack of damage to the bullet recovered from the victim's back indicated that it had been fired while the victim was standing, rather than lying on the ground.  Jules Slaick testified as to various distances at the crime scene and the location of light fixtures.

7

"Defendant did not testify at the guilt phase of trial." (*Fierro I*, *supra*, 1 Cal.4th at pp. 200-203.)

C.    PROCEDURAL HISTORY

A jury convicted defendant of first degree murder (§ 187) and two counts of robbery (§ 211). (*Fierro I*, *supra*, 1 Cal.4th at p. 200.) "The jury found true the special circumstance allegation that the murder was committed during the perpetration of a robbery (§ 190.2, subd. (a)(17)(i)), and also returned a special finding that defendant shot and killed the victim. As to each count the jury also found that defendant used a firearm to commit the offense (§ 12022.5)." (*Fierro I*, at p. 200.) Defendant was sentenced to death. (*Ibid.*) In 1991, from an automatic appeal, the California Supreme Court affirmed the judgment in its entirety. (See *id.* at pp. 200-255.)

Sometime thereafter, defendant filed a petition for writ of habeas corpus in the California Supreme Court alleging, in relevant part, that his trial counsel was ineffective for failing to investigate and defend against the prosecutor's theory of the case and failing to investigate and present a third-party culpability defense. The California Supreme Court summarily denied the petition. (See *In re Fierro*, S031671, Supreme Ct. Mins., Feb. 23, 1994.)

Defendant also filed a petition for writ of habeas corpus in the federal district court in which he raised the above claim of ineffective assistance of counsel. On March 6, 2000, the federal district court granted defendant an evidentiary hearing on his claim regarding counsel's failure to consult with a criminalist or pathologist, to present a third-

8

party culpability defense, and to challenge the prosecution's expert, but only insofar as the claim implicated defendant's eligibility for a death sentence. In pertinent part, the district court explained: "Nonetheless, the arguable deficiency did not in any way impact the jury's guilty verdict. The jury found that Allessie was killed in the course of a robbery. Allessie's death at the time of the robbery was not merely a temporal coincidence. The killing was a homicide; that much is indisputable; he died of a gunshot wound. [¶] . . . Once the jury found that the killing occurred in the course of a robbery, 'the jury ha[d] no option but to return a verdict of murder of the first degree, whether the killing was done intentionally or accidentally.' [Citation.]"

Thereafter, on June 18, 2003, defendant filed another state habeas petition in the California Supreme Court, raising a claim that he was intellectually disabled within the meaning of *Atkins v. Virginia* (2002) 536 U.S. 304 (*Atkins*), such that he was ineligible for the death penalty. The California Supreme Court issued an order to show cause on March 16, 2005, to be heard in the Riverside County Superior Court.

On July 21, 2010, the Riverside County Superior Court found defendant was intellectually disabled within the meaning of *Atkins* and resentenced him to life without the possibility of parole.

Subsequently, with respect to defendant's federal habeas proceedings, the district court decided that defendant's penalty phase claims were moot in light of the fact he had been resentenced to life in prison. As to defendant's guilt phase claims, and particularly his claim of ineffective assistance of counsel regarding counsel's failure to investigate the

9

third-party culpability defense, the district court likewise concluded an evidentiary hearing was no longer required. The district court reasoned: "By these claims, Petitioner [defendant] seeks to attack the special circumstance finding by attempting to disprove that he was the shooter and by arguing that he was unable to form the intent to kill because of his impairment. As presented, the Court does not find that a hearing is necessary to the resolution of these claims. The testimonial record and the supplemental filings suffice to provide the Court a full picture of Petitioner's arguments, and no credibility issues are presented necessitating live testimony. Accordingly, no evidentiary hearing will be held on these claims."

The district court ultimately denied defendant's petition in its entirety, including his challenge to the special circumstance in which he claimed counsel was ineffective for failing to investigate and present a third-party culpability defense, observing: "Petitioner cannot show the requisite 'reasonable probability' that the result would have been different at trial absent Morris's [defense counsel's] asserted error. *Strickland* [*v. Washington* (1984)] 466 U.S. [668,] 693-94. Even if Morris could have obtained evidence that Castrejon had been the other man at the scene, such evidence would not have established that he was the shooter. Trudy Allessie testified that Petitioner was the man who had robbed her, and that he had been wearing a white or light yellow t-shirt at the time. (RT at 2878). Carole DiCenso was certain that the man in the white t-shirt shot the victim. (RT at 3245-51). DiCenso described the other suspect as wearing a black muscle t-shirt. (RT at 3245-51). Gonzalez also positively identified Petitioner as the

10

shooter.  (RT at 3159-60, 3479-80).  Based on this eyewitness testimony, there is no reasonable likelihood that presentation of evidence as to the identity of an accomplice would have changed the jury's verdict.  [Citation.]"

On November 26, 2019, counsel on defendant's behalf filed a section 1170.95 petition for resentencing pursuant to section 1170.95, requesting that his murder conviction be vacated based on changes to sections 188 and 189, as amended by Senate Bill 1437, and asking to be resentenced.  Defendant also requested the appointment of counsel.[6]  The People filed a preliminary response, arguing defendant was ineligible for relief.

On December 13, 2019, the trial court called the case in the presence of the People, but not defendant or Attorney Thomson, and dismissed defendant's petition.

On December 27, 2019, Attorney Thomson filed a motion for reconsideration on defendant's behalf, and the People filed a supplemental response.

The trial court heard the matter on January 15, 2020.  Counsel with Attorney Thomson's office appeared on behalf of defendant and requested defendant be appointed counsel and the petition be heard on the merits.  Counsel also inquired as to the court's basis for its prior dismissal of defendant's petition.  The court explained that defendant's record of conviction established that he was "[s]tatutorily ineligible" and "not entitled to

---

[6]  Although the trial court never appointed counsel, defendant had the benefit of counsel (attorney James S. Thomson) throughout the section 1170.95 proceedings. Attorney Thomson had been appointed for defendant once his case was automatically appealed to the California Supreme Court and has been representing defendant ever since, including this appeal.  (See *Fierro I*, *supra*, 1 Cal.4th 173.)

relief" because a jury had determined defendant "to be the actual slayer" and also found true the robbery-murder special circumstance allegation.

Defense counsel argued that while the court could consider the appellate record, it could also consider new evidence attached to the petition, which was the evidence counsel had presented in conjunction with his federal habeas petition, in determining whether a petitioner had made a prima facie showing. Defense counsel claimed the evidence he presented with his federal habeas petition was new evidence that demonstrated defendant could no longer be convicted under the new felony-murder law. The trial court responded that defendant would have to have succeeded in his federal habeas proceedings for the court to consider the new evidence. The court also stated it could not consider that evidence where there had been a jury determination "he is guilty under the law as it is contemplated after January of 2020." Ultimately, the court reaffirmed its ruling summarily denying the petition.

Defendant timely appealed from the court's order denying his section 1170.95 petition.

## DISCUSSION

Defendant contends the trial court erred in denying his petition for resentencing without an evidentiary hearing because he made a prima facie showing he falls within the provisions of section 1170.95. He also argues the trial court erred in relying on the jury's robbery felony-murder special circumstance findings.

12

A.     SENATE BILL 1437 GENERALLY

Senate Bill 1437, which became effective on January 1, 2019, addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine by amending sections 188 and 189.  (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722 (*Martinez*).)  By amending sections 188 (defining malice) and 189 (defining the degrees of murder), Senate Bill 1437 changed "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f); see *Martinez*, at pp. 722-723.)

Senate Bill 1437 also added section 1170.95.  That section provides that "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts." (§ 1170.95, subd. (a).)  A person filing a petition under section 1170.95 is entitled to the appointment of counsel, the opportunity for further briefing and a hearing if, in his petition, he "makes a prima facie showing that he . . . is entitled to relief" under that section.  (§ 1170.95, subds. (c) & (d); *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1139-

13

1140 (*Lewis*), review granted Mar. 18, 2020, S260598;[7] *People v. Verdugo* (2020) 44 Cal.App.5th 320, 330 (*Verdugo*), review granted Mar. 18, 2020, S260493.)

A petition may be filed when the following three conditions are met: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner *could not* be convicted of first or second degree murder *because of* changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)-(3), italics added.) A person may be convicted of murder, even after the 2019 changes to sections 188 and 189, if he or she "was the actual killer." (§ 189, subd. (e)(1).)

Courts of Appeal have interpreted section 1170.95 to provide for multiple reviews of a petition by the trial court. (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 897-898 (*Tarkington*), review granted Aug. 12, 2020, S263219; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 57-58 (*Cornelius*), review granted Mar. 18, 2020, S260410; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 326-328; *People v. Drayton* (2020) 47 Cal.App.5th 965, 974-975 (*Drayton*).) Subdivision (b) of section 1170.95 describes an initial review to determine the facial sufficiency of the petition. (*Verdugo*, at pp. 327-328.) To be facially

---

**7** Under California Rules of Court, rule 8.1115, we may rely on appellate cases while review is pending as persuasive authority. (Cal. Rules of Court, rule 8.1115(e)(1), eff. July 1, 2016.)

sufficient, the petition must contain the petitioner's declaration that the petitioner is eligible for relief according to the criteria in subdivision (a), the case number and year of conviction, and whether the petitioner is requesting appointment of counsel. (§ 1170.95, subd. (b)(1).) If the petition is missing any of this information "and cannot be readily ascertained by the court, the court may deny the petition without prejudice." (§ 1170.95, subd. (b)(2).) This initial review amounts essentially to a ministerial review to ensure that the right boxes are checked.

Section 1170.95, subdivision (c), then describes the next two levels of review and sets forth the trial court's obligations upon the submission of a complete petition. It provides, "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

The first sentence in section 1170.95, subdivision (c), refers to a prebriefing, initial prima facie review to preliminarily determine a petitioner's statutory eligibility for relief as a matter of law. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329.) In this step of review, the trial court determines, based upon its review of readily ascertainable information in the record of conviction and the court file, whether the petitioner is statutorily eligible for relief. (*Id.* at pp. 329-330.) The court may review the complaint, the information or indictment, the verdict form or the documentation for a negotiated plea, and the abstract

15

of judgment. (*Ibid.*) A Court of Appeal opinion is part of the defendant's record of conviction (*id.* at p. 333; *Lewis*, *supra*, 43 Cal.App.5th at pp. 1137-1138 [in determining the sufficiency of a section 1170.95 petition, the court may review the record of conviction, which includes the opinion in a defendant's direct appeal]; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1080-1081, 1086 [same]; *People v. Law* (2020) 48 Cal.App.5th 811, 820-821 [same], review granted July 8, 2020, S262490), as are jury instructions (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939). If these documents reveal ineligibility for relief, the trial court can dismiss the petition. (*Verdugo*, at p. 330.)

But, if the record of conviction does not establish as a matter of law the petitioner's ineligibility for resentencing, evaluation of the petition proceeds to the second prima facie review, in which "the court must direct the prosecutor to file a response to the petition, permit the petitioner (through appointed counsel if requested) to file a reply and then determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 330.) The trial court must accept as true the petitioner's factual allegations and make a preliminary assessment regarding whether the petitioner would be entitled to relief if the factual allegations were proved. (*Id.* at p. 328.)

16

" 'A prima facie showing is one that is sufficient to support the position of the party in question.' " (*Lewis*, *supra*, 43 Cal.App.5th at p. 1137.) " ' "The words 'prima facie' mean literally, 'at first view,' and a prima facie case is one which is received or continues until the contrary is shown and can be overthrown only by rebutting evidence adduced on the other side." ' " (*People v. Nunez* (2020) 57 Cal.App.5th 78, 88, review granted Jan. 13, 2021, S265918.) When conducting a prima facie review, the court's "role . . . is simply to decide whether the petitioner is ineligible for relief as a *matter of law*, making all factual inferences in favor of the petitioner." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329, italics added.) Whether a petitioner has made the requisite prima facie showing is a predominantly legal question. We thus review the trial court's ruling de novo. (*Drayton*, *supra*, 47 Cal.App.5th at p. 981.)

Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) At such a hearing, both the prosecution and the defense may rely on the record of conviction or may offer new or additional evidence. (§ 1170.95, subd. (d)(3).) "[T]he burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3); *Martinez*, *supra*, 31 Cal.App.5th at pp. 723-724.)

17

B.     ANALYSIS

Here, the trial court correctly concluded that defendant did not make out a prima facie case for relief because the record of conviction establishes, as a matter of law, that he is not statutorily eligible for relief.  The record of defendant's conviction indisputably shows he was convicted as the actual killer who committed felony murder with the intent to kill.  The jury was instructed on the elements of premeditated and deliberate first degree murder as well as first degree felony murder.[8]  The jury was also instructed on principles of aiding and abetting.  Moreover, the jury was specifically instructed to determine whether defendant was the person who actually shot and killed the victim.  The jury expressly found that defendant "shot and killed" the victim and that he personally used a firearm in the commission of the murder.  The jury also found true the robbery-felony murder special circumstance (§ 190.2, subd. (a)(17)(i)) allegation that defendant committed the murder while engaged in the crime of robbery.  (*Fierro I*, *supra*, 1 Cal.4th at p. 200.)  The jury's findings demonstrate that they actually found defendant guilty on a theory where he was the actual killer.  The jury's findings of fact necessarily label defendant as the "actual killer" and hence defendant is ineligible for relief under section 1170.95 as a matter of law.  (E.g., *Tarkington*, *supra*, 49 Cal.App.5th at p. 899 [the defendant was actual killer]; *Cornelius*, *supra*, 44 Cal.App.5th at pp. 56, 58 [the defendant personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)), and, as the actual killer, was ineligible for 1170.95 relief].)

18

Defendant does not dispute that the jury found him to be the actual killer but argues "this determination was based on invalid forensic evidence and counsel's failure to present evidence of third-party culpability." He further contends that the habeas evidence he presented with his petition establishes a prima facie case entitling him to relief because "he could not be convicted of murder under the current definition and in consideration of the evidence showing he was not the shooter." We disagree.

Although there were purported ineffective assistance of counsel issues with trial counsel's presentation of the forensic evidence and counsel's failure to present evidence of third-party culpability, the jury's findings were neither vacated nor reversed. Defendant never directly challenged the sufficiency of the evidence supporting the jury's finding that he was the actual killer. In addition, neither the state nor the federal courts have granted defendant's habeas petitions on the issue of guilt. Further, the courts that have considered the merits of defendant's ineffective assistance of counsel claims have rejected it. The California Supreme Court summarily denied the claim. The federal district court also denied the ineffective assistance of counsel contention, noting any error was harmless due to the compelling eyewitness testimony identifying defendant as the shooter.

---

**8** As to first degree felony murder, the jury was instructed as follows: "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as a result of the commission of or attempt to commit the crime of robbery, and where there was in the mind of the perpetrator the specific intent to commit such crime, is murder of the first degree."

Defendant argues that the federal court rejected his ineffective assistance of counsel claim under a higher standard than the prima facie showing required for a section 1170.95 petition and that the federal court originally granted an evidentiary hearing on the claim. However, this finding does not demonstrate defendant could not now be convicted of murder under the amended statutes because of changes to the law. In other words, defendant could still be convicted of murder as the actual killer, despite changes to sections 188 and 189. Section 1170.95 does not grant trial courts the authority to relitigate the validity of jury findings. Defendant thus may not challenge the jury's findings he was the actual killer who personally shot and killed the victim.

During oral argument, defense counsel appeared to argue that defendant made a prima facie showing entitling him to an evidentiary hearing because he had presented new evidence via expert testimony and new law concerning eyewitness testimony.[9] But, to be eligible for resentencing under section 1170.95, defendant must show that he "*could not* be convicted of first or second degree murder *because of* changes to Section 188 or 189 made" in Senate Bill 1437. (§ 1170.95, subd. (a)(3), italics added.) Defendant has not shown he could not now be convicted of murder due to changes in section 188 or 189. This is the first hurdle defendant must overcome before he is entitled to an evidentiary hearing under subdivision (d) of section 1170.95.

---

[9] Prior to oral argument, defense counsel requested judicial notice of an August 28, 2018 letter from the California Judicial Council to the Honorable Nancy Skinner (author of Senate Bill 1437) and a September 13, 2018 letter from the California Judicial Council to then-Governor Edmund G. Brown, Jr. We deny the May 27, 2021 request as unnecessary to the disposition of this appeal.

The jury here unequivocally found defendant was the actual killer; the person who actually shot and killed the victim. As the Court of Appeal in *People v. Allison* (2020) 55 Cal.App.5th 449 observed: "We do not believe it is reasonable to interpret section 1170.95 as allowing for . . . challenges based on attacks on prior factual findings. Nothing in the language of section 1170.95 suggests it was intended to provide redress for allegedly erroneous prior factfinding. In particular, subdivision (a)(3) of section 1170.95 says nothing about erroneous prior findings or the possibility of proving contrary facts if given a second chance. Rather, it requires that the petitioner could not be convicted of murder *because of the changes to sections 188 and 189*, not *because a prior fact finder got the facts wrong*. The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved." (*Allison*, at p. 461.)

Nothing in Senate Bill 1437 suggests the Legislature intended to provide a "do-over" for allegedly erroneous prior factual findings or defendants an opportunity to retry their cases by challenging their convictions in a section 1170.95 petition. Rather, courts have allowed defendants to challenge their convictions or jury findings by way of habeas corpus. (See *In re Scoggins* (2020) 9 Cal.5th 667, 673 ["Where a decision clarifies the kind of conduct proscribed by a statute, a defendant whose conviction became final before that decision 'is entitled to post-conviction relief upon a showing that his [or her] conduct was not prohibited by the statute' as construed in the decision"]; *People v. Jones*

21

(2020) 56 Cal.App.5th 474, 481-482 (*Jones*) [petition for writ of habeas corpus proper avenue to challenge special circumstance finding], review granted Jan. 27, 2021, S265854.)  If defendant is entitled to relief based on new evidence or law concerning eyewitness testimony, the avenue for such relief is not section 1170.95, but a petition for writ of habeas corpus.  (See *People v. Murillo* (2020) 54 Cal.App.5th 160, 168, review granted Nov. 18, 2020, S264978.)

In a habeas proceeding challenging a jury's findings based on new evidence, the petitioner bears the burden of demonstrating that the finding must be vacated for insufficient evidence.  (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)  A trial court's determination of whether the petitioner has made a prima facie showing entitling them to statutory relief under section 1170.95, subdivision (c), is based upon its review of readily ascertainable information in the record of conviction and the court file and not a reweighing of the jury's findings or the evidence.  (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330.)  The determination of whether the petitioner is statutorily eligible for relief as a matter of law "does not require resolution of disputed facts; the facts are a given"—the court simply determines if the record of conviction shows the petitioner is entitled to relief.  (*In re Miller* (2017) 14 Cal.App.5th 960, 980.)  " 'When a defendant seeks habeas corpus relief, the underlying judgment is presumed valid. . . .  In a habeas corpus challenge to the sufficiency of the evidence to support a [ ] [jury's] finding, the "standard of review . . . is whether, when evidence that is reasonable, credible, and of solid value is viewed 'in the light most favorable to the prosecution, any rational trier of

22

fact could have found the essential elements of the allegation beyond a reasonable doubt.' " ' " (*Jones*, *supra*, 56 Cal.App.5th at p. 483, quoting *In re Bennett* (2018) 26 Cal.App.5th 1002, 1018, quoting *People v. Clark* (2016) 63 Cal.4th 522, 610.)

For the reasons explained, a petition under section 1170.95 is not the appropriate vehicle for asserting a challenge to the jury's finding that defendant was the actual killer who personally shot the victim. Section 1170.95 does not permit a court to ignore express findings of a jury or to supplant them with new findings based on evidence provided at a hearing where the People would again have the burden of proof beyond a reasonable doubt. If defendant believes the jury's findings lack evidentiary support, the appropriate procedure for challenging it is by a petition for habeas corpus. A section 1170.95 petition cannot be utilized as a new trial to relitigate the factual findings made by a jury.

Based on the foregoing reasons, we conclude the petition was properly denied without a formal appointment of counsel or an evidentiary hearing.[10] (See, e.g., *Lewis*, *supra*, 43 Cal.App.5th at pp. 1138-1139 [it would be a " 'gross misuse of judicial resources' " to issue an order to show cause or appoint counsel where a review of the court record established ineligibility as a matter of law].)

---

[10] Because we find the record of defendant's conviction indisputably shows he was convicted as the actual killer and thus statutorily ineligible for relief as a matter of law, we need not determine whether the trial court erred in relying on the jury's robbery felony-murder special circumstance findings in denying defendant's section 1170.95 petition.

## DISPOSITION

The order denying defendant's resentencing petition under section 1170.95 is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER                     

Acting P. J.

We concur:


SLOUGH             

               J.


RAPHAEL           

               J.